1  ANTHONY J. JOHNSON
2  1728 Griffith Ave.
   Las Vegas, NV 89104
3  Telephone: (619) 246-6549
4
   PRO SE
5
6
7
8              **UNITED STATES DISTRICT COURT**
9
              **SOUTHERN DISTRICT OF CALIFORNIA**
10
11  ANTHONY JOHNSON, an individual      Case No.: **'19CV1185 JLS   JLB**
12
                    *Plaintiff,*        **COMPLAINT FOR:**
13
14      v.                              **(1) MALICIOUS PROSECUTION**
                                        **(2) BREACH OF FIDUCIARY DUTY**
15  MANUEL ALTAMIRANO, an individual,   **(3) CONVERSION**
16  RICHARD TURNER, an individual,      **(4) ECONOMIC INTERFERENCE**
    DAVID KINNEY, an individual,        **(5) BREACH OF CONTRACT**
17  DAVID HUFFMAN, an individual,       **(6) RESCISSION**
18  PAUL TYRELL, an individual,         **(7) INDEMNIFICATION**
    SEAN SULLIVAN, an individual,
19  STORIX, INC,. a California Corporation, DEMAND FOR JURY TRIAL
20  and DOES 1-5, inclusive,
21                  *Defendants.*
22
23
24  //
25  //
26  //
27  //
28  //

                              1

**FILED**

Jun 24 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ CharityW        DEPUTY

PRO SE

1

**PARTIES**

2      1.    Plaintiff Anthony J. Johnson ("Johnson") is a citizen of the State of Nevada and
3   resident of Clark County.

4      2.    Defendants Manuel Altamirano ("Altamirano"), Richard Turner ("Turner") and
5   David Huffman ("Huffman") are citizens of the State of California and residents of San
6   Diego County.

7      3.    David Kinney ("Kinney") is a citizen of the State of Minnesota and resident of
8   Ramsey County and was at times mentioned herein a citizen of the State of California
9   and resident of San Diego County.

10     4.    Because defendants Altamirano, Turner, Kinney and Huffman, unless otherwise
11  stated, are shareholder/partners of Plaintiff in the business of Storix and knowingly
12  conspired to initiate, continue or otherwise commit certain wrongful acts alleged below,
13  they are hereafter collectively referred to as "**Partner-Defendants**".

14     5.    Defendants Paul Tyrell ("Tyrell") and Sean Sullivan ("Sullivan") are corporate
15  counsel for Storix with the firm of Procopio, Cory, Hargreaves, Savitch, LLP and are
16  citizens of the State of California and resident of San Diego county. Because, unless
17  otherwise stated, Tyrell and Sullivan cooperated in initiating, continuing or otherwise
18  committing certain wrongful acts alleged below, they are hereafter collectively referred to
19  as "**Attorney-Defendants**".

20     6.    Defendant Storix, Inc. ("Storix") is a small corporation consisting of six (6)
21  shareholders, organized and existing under the laws of the State of California in 2003,
22  with its principal place of business in San Diego County.

23     7.    The true names and capacities, whether individual, corporate, associate or
24  otherwise, of the defendants named herein as DOES 1 through 5, inclusive, are unknown
25  to Plaintiff who therefore sues said defendants by such fictitious names. Plaintiff will
26  seek leave to amend his complaint to show their true names and capacities when the same
27  have been ascertained.

28

1

**JURISDICTION AND VENUE**

2        8.   This Court has original jurisdiction over Plaintiff's claim on the basis of

3  diversity because the only Plaintiff in the action resides in a different State than all

4  defendants, and Plaintiff seeks damages in excess of $75,000.

5        9.   Venue for this action is proper in the Southern District of California because

6  five of the six individual defendants reside in San Diego County, the corporate defendant

7  is a business located in San Diego County, and events and occurrences giving rise to the

8  present action occurred in San Diego, California.

9

**FACTUAL ALLEGATIONS**

10      10.  In February 2003, Johnson formed Storix, Inc. to continue selling under a

11  corporate entity the software ("SBAdmin") he designed, developed and previously sold

12  as a sole proprietor. From 2003 to 2011, Johnson was the sole shareholder, officer and

13  director of Storix and managed all Storix's business operations.

14      11.  Johnson entered into an oral contract with Storix upon its formation, wherein

15  Storix was granted rights to market, sell, copy, distribute and license SBAdmin to third-

16  parties in exchange for future compensation for the copyright if or when Johnson's

17  participation in Storix ended. No Partner-Defendant was a party to the contract or an

18  agent of Storix nor had any financial interest in Storix when the agreement took place.

19  Partner-Defendants are and were aware of the agreement and that Johnson was entitled to

20  compensation for his copyrights. Johnson continually performed his obligations under the

21  contract by providing Storix the copyrights to SBAdmin needed to conduct its business

22  for over fifteen (15) years, during which time all profits of Storix were derived from sales

23  of SBAdmin.

24      12.  In September 2011, Johnson took a medical leave from Storix due to an illness

25  expected to be terminal. Before taking leave, Johnson agreed to issue 1500 new shares of

26  Storix to Partner-Defendants, thereby reducing his 100% ownership of Storix to 40% in

27  exchange for Partner-Defendants' agreement to continue managing Storix and improving

28  SBAdmin to ensure the company's ongoing viability. Johnson also agreed to remain

1  actively involved in Storix by providing periodic assistance with product research and
2  development.

3       13.  In 2013, Johnson was given a surprise clean bill of health and returned to Storix
4  to develop significant software improvements to the network security of SBAdmin that
5  had grown obsolete. Defendants Turner and Huffman began antagonizing Johnson,
6  irrationally criticizing his work, making unreasonable demands on his time, and
7  increasingly complicated his efforts to develop the new software version as he neared
8  completion. By May 2014, Johnson could no longer tolerate the hostility and resigned
9  from Storix in protest. Johnson made considerable effort to resolve the conflict, including
10 ongoing development assistance, in order to continue his participation in Storix.
11 Defendant Altamirano informed Johnson, without reason, that all Partner-Defendants
12 agreed he was no longer welcome at Storix.

13      14.  In June 2014, Johnson, as the registered owner of the copyrights to SBAdmin,
14 threatened to withdraw Storix's license to sell SBAdmin if the Partner-Defendants were
15 unwilling to work out their differences. Partner-Defendants refused to discuss any
16 compromise and instead had Storix's counsel send a letter threatening to sue Johnson for
17 securities fraud if he did not withdraw his claim of copyright ownership and provide
18 Storix a written agreement transferring his ownership rights. Johnson filed a copyright
19 infringement lawsuit against Storix, and Storix filed a counter-claim for declaratory
20 judgment of its ownership of all SBAdmin copyrights.[1]

21      15.  At Storix's annual shareholder meeting in February 2015, Partner-Defendants
22 used their collective 52% majority of shares to re-elect defendants Turner, Huffman and
23 Altamirano to the three of the five board seats. Johnson used his shares to elect himself to
24 the board in order to continue his involvement in the company and to avoid triggering
25 Storix's obligation to pay for the copyright he then knew Storix could no longer afford.
26 Johnson also used his shares to help elect another 8% shareholder, Robin Sassi ("Sassi"),
27 to the board.

28 ---

[1]  U.S. District Court Case No. 14-CV-1873 H (BLM)

4

1    16.  After the shareholder meeting, Attorney-Defendant Tyrell drafted new Storix

2  bylaws, new board policies, and created a written shareholder agreement between the

3  only the Partner-Defendants and Storix. Together, the documents ensured the Partner-

4  Defendants would retain their board majority at all future board elections and added to

5  majority control over minority shareholders and directors. At a special board meeting

6  attended by Tyrell and the Partner-Defendant directors, Johnson objected to the purpose

7  and legality of the new corporate documents, and Johnson repeatedly objected to their

8  voting for an agreement with Storix they were parties to. There was no response to

9  Johnson's objections and the Partner-Defendant directors voted to approve all documents.

10    17.  In June 2015, Johnson sold his San Diego home and moved to Florida due to

11  the increasing cost of the copyright litigation.  A few weeks later, Johnson traveled to San

12  Diego to attend a mandatory settlement conference in the copyright case. On the morning

13  of the settlement conference, Partner-Defendants Altamirano, Turner and Huffman

14  directed Attorney-Defendant Tyrell to file a lawsuit against Johnson in Storix's name

15  (hereafter the "Direct Suit".) [2] Johnson was never informed of the complaint or the

16  underlying claim before the Direct Suit was filed.

17    18.  Johnson was served the complaint in the Direct Suit at his Florida address after

18  he returned home from the settlement conference. The complaint alleged a single cause of

19  action – that Johnson, as a Storix director, breached a fiduciary duty by failing to inform

20  the board of his intent to start a competing business in California. The complaint also

21  alleged that Johnson lived in San Diego, a fact all defendants knew to be false.

22    19.  Partner-Defendants agreed to cease all shareholder profit distributions shortly

23  after filing the Direct Suit knowing that doing so would leave Johnson with no income to

24  defend the claims. Johnson has received no shareholder distributions from Storix since.

25    20.  In October 2015, Johnson and Sassi filed a shareholder derivative suit (hereafter

26  the "Derivative Suit") against the Partner-Defendants, alleging breach of fiduciary duty,

27

28  [2]  San Diego Superior Court Case No. 2015-00028262-CU-BT-CTL.

1 abuse of control, and wasteful spending.[3] Partner-Defendants were informed that they
2 were prohibited by law from using Storix's resources to defend claims brought on the
3 company's behalf, and Partner-Defendants represented that Storix funds were not being
4 used for their defense.

5     21.  Attorney-Defendants filed a demurrer to the Derivative Suit on grounds that
6 Johnson and Sassi lacked standing to bring the action on Storix's because they were
7 adverse to the company's interests and because they failed to make a demand on Storix's
8 board to bring the action itself. The court found that Storix could not challenge the
9 plaintiffs' standing because its board majority was occupied by Partner-Defendants who
10 were all defendants against Storix in the Derivative Suit.

11     22.  In December 2015, a jury trial was held in the copyright case whereat Partner-
12 Defendants attempted to show that Johnson had been compensated for his copyrights.
13 The jury rendered a verdict that Johnson implicitly transferred his ownership of
14 SBAdmin to Storix upon its formation, but the jury did not reach the question of whether
15 Johnson was compensated for his copyrights. On appeal, the Ninth Circuit upheld the
16 judgment[4], finding that Johnson assigned his ownership rights by way of an oral
17 agreement.

18     23.  In early 2016, Attorney-Defendants amended the complaint in the Direct Suit to
19 add an allegation that Johnson sent an email to Storix's customers two months after the
20 lawsuit was filed. Johnson had then been living in Florida for over 9 months, yet the
21 amended complaint still alleged that Johnson resided in San Diego and that all events
22 occurred in San Diego.

23     24.  During the 3 ½ years litigating the Direct Suit, all Defendants continued to
24 assert that Johnson was operating a "secret" business in California and was actively
25 marketing Storix's proprietary software as a competing product. All Defendants
26
27

28
[3] San Diego Superior Court Case No. 2015-00034545-CU-BT-CTL.
[4] Ninth District Court of Appeals Case No. 16-55439.

6

1  possessed evidence months before bringing the Direct Suit that Johnson had no intention
2  of competing with Storix, and no evidence to the contrary was produced since.

3      25. In September 2017, Partner-Defendants held a board meeting where they
4  informed Johnson and Sassi that they'd been negotiating the sale of Storix to a large
5  competitor, Veeam Software, for several months. Veeam offered to license SBAdmin
6  from Storix to include in a larger business opportunity, but the Partner-Defendants
7  insisted that Veeam purchase Storix instead. Veeam agreed and provided Storix a letter of
8  intent to purchase Storix for $5M. Partner-Defendants informed Johnson that they would
9  not approve the sale unless Johnson dismissed all personal and derivative claims against
10 them and used his share of the sale to pay the outstanding debt they imposed on Storix for
11 their defense. Partner-Defendants also refused to dismiss the Direct Suit against Johnson
12 unless he signed the deal. Johnson attempted to salvage the perpetual license agreement
13 Veeam originally wanted, but Veeam's management indicated they had lost confidence in
14 Storix's management and withdrew the offer to buy the company.

15     26. In January-February 2018, a jury trial was held on Storix's Direct Suit and
16 Johnson's cross-claims against the Partner-Defendants. Attorney-Defendant Sullivan sat
17 beside Partner-Defendants' counsel and joined in their defense on issues unrelated to
18 Storix's claim against Johnson. The jury rejected Storix's $1.2 million claim against
19 Johnson for "unjust enrichment" and "unfair head start", finding that Johnson did not use
20 Storix's confidential information to its detriment or breach his duty of confidentiality or
21 loyalty to Storix for his benefit.

22     27. The court adopted the jury's verdict in favor of Johnson on Storix's primary
23 claim, and further denied all eleven (11) of Storix's demands for injunctive relief.
24 However, the court also adopted the jury's verdict awarding Storix $3,739 for "loss of
25 employee productivity" on an unrelated claim Storix introduced during trial.[5]

26

27 [5] The claim was based on an email informing a few customers of the pending litigation and potential
28 copyright infringement. The claim is pending appeal based on litigation privilege in the California Court
of Appeals (Case No. D075308).

28. A bench trial on Derivative Suit claims was held two months later. Immediately prior, the court granted Partner-Defendants' pre-trial motion to dismiss Johnson as a shareholder plaintiff on grounds that he could not fairly and adequately represent Storix's interests based on the jury's award against Johnson of $3,739.

29. In August 2018, Storix held its annual shareholder meeting for 2017, whereat Johnson chose not to re-elect himself to the Storix board. This finally terminated Johnson's involvement in Storix and triggered Storix's obligation to pay Johnson for his copyrights. Johnson sent Storix an invoice for $2.75 million, a substantial discount to the actual value of the copyrights from which Storix derived over $2 million in annual sales through the end of 2018. Attorney-Defendant Tyrell responded that Storix would not pay Johnson's invoice. Johnson informed the board that he rescinded the contract with Storix due to Storix's failure to perform its obligations. Johnson received an email response from defendant Huffman indicating the board discussed the issue with Storix's counsel and rejected the rescission.

30. In September 2018, Johnson sent a written demand for indemnification to the Storix board detailing his legal expenses incurred in connection with his successful defense against the claim of his operating a competing business. Johnson noted that Storix was required to reimburse Johnson "for any claim, issue or matter" within 90 days pursuant to California Corp. Code § 317(d) and Storix's new bylaws. Johnson never received a response.

In December 2018, Johnson obtained information showing that Partner-Defendants converted almost half a million dollars of Storix's profits earned when Johnson was a sole shareholder to their personal equity accounts. While Johnson was on medical leave in 2011-2013, Partner-Defendants changed the company's accounting method, amended tax filings, and thereafter directed Attorney-Defendants to prevent Johnson from accessing financial records which would have raised his suspicions and provided a reasonable opportunity for Johnson to discover this fact earlier. Johnson informed Partner-Defendants of his findings and received no response.

**General Allegations**

31.  Partner-Defendants owed and continue to owe a fiduciary duty of loyalty, good faith and fidelity to Johnson by virtue of the trust and confidence bestowed on them in their collective roles as majority shareholders and business partners in a closely-held corporation and by Partner-Defendants' collective position of dominance and superior influence over Johnson as a minority shareholder.

32.  At all times since being issued their stock, Partner-Defendants retained a collective majority of Storix's outstanding shares, the majority of Storix board seats, all officer positions, and have maintained sole possession and exclusive control of all accounts and records of Storix. Every act and decision of Storix relevant to this action was exclusive that of Partner-Defendants without authorization, approval or ratification by any disinterested directors or shareholders of Storix.

33.  Partner-Defendants, and each of them, entered into an agreement and/or understanding, and otherwise planned and conspired with each other in committing the wrongful and tortious conduct alleged herein. Partner-Defendants used their collective majority shares to exercise absolute control of Storix to deny rights and take unfair advantage of Johnson as a minority shareholder, including unlawful measures to ensure Johnson could not interfere with their decisions and conduct. Partner-Defendants committed such acts by using Storix's corporate name and resources for perverted and illegitimate business purposes and to order, direct or authorize others to perform the wrongful acts. Partner-Defendants, and each of them, were aware of the wrongful conduct alleged herein, and either personally participated, explicitly or implicitly agreed, and intended that the acts be committed. At any time relevant to the claims herein, any Partner-Defendant could have sold, abandoned or hypothecated his stock, or voted his shares in a manner that would have ceased or prevented the wrongful conduct of his co-conspirators.

34.  Without approval from any independent or disinterested authority, Partner-Defendants used Storix's funds to pay their personal attorneys and corporate counsel to

1   defend the Derivative Suit claims against them. In all actions taken to defeat and
2   otherwise interfere in the Derivative Suit, Attorney-Defendants acted under the exclusive
3   direction of the Partner-Defendants, against Storix's interest, and for the sole benefit of
4   Partner-Defendants.

5   35. Partner-Defendants rendered Storix insolvent by imposing on Storix the cost of
6   the Direct Suit against Johnson rather than a proper shareholder derivative lawsuit.
7   Partner-Defendants deepened Storix's insolvency by self-approving and prioritizing the
8   advancement of their personal expenses for years in complete disregard of Storix's
9   business and other financial obligations. As controlling shareholders of a closely held
10  corporation, Partner-Directors conducted Storix's business unlawfully and unreasonably
11  and were negligent in their duties to ensure Storix's financial viability.

12  36. This action is the only remedy available to Johnson for recovering personal
13  property or relief from damages alleged herein because Partner-Defendants' misconduct
14  and neglect, including unlawful payments to Attorney-Defendants, has rendered Storix
15  deeply insolvent. Also, because a court granted Partner-Defendants' demand that Johnson
16  be precluded from bringing shareholder claims on Storix's behalf, Johnson has no other
17  remedy to recover damages as a minority shareholder that may have also been caused to
18  other shareholders.

19                              **FIRST CAUSE OF ACTION**

20                      **(Malicious Prosecution – Against defendants**
21            **Altamirano, Turner, Kinney, Huffman, Tyrell and Sullivan)**

22  37. Plaintiff re-alleges and incorporates by reference all prior paragraphs as though
23  fully set forth herein.

24  38. Attorney-Defendants and Partner-Defendants initiated and continued the Direct
25  Suit against Johnson without probable cause, without stating a cause of harm, and
26  without the approval of any disinterested directors or shareholders of Storix. No
27  reasonable person in these circumstances would have believed there were grounds to
28  bring the cause of action against Johnson.

1    39.  The Direct Suit was instituted for malicious purposes other than to succeed on
2  the merits, and the claim was pursued to a legal termination on its merits in Johnson's
3  favor.[6]

4    40.  Each Partner-Defendant, whether or not having personally authorized the
5  action, had full knowledge of the Direct Suit, knew the claim to be false, and possessed
6  the opportunity and ability to end the litigation at any time by use of his shareholder vote.
7  Attorney-Defendants knew the claim was false and legally untenable when they filed the
8  lawsuit. Attorney-Defendants continue to represent Storix in post-trial motions involving
9  the Direct Suit. All defendants took extraordinary actions to continue the lawsuit long
10  after evidence proved its primary claim to be patently false.

11    41.  Johnson was harmed by the emotional and financial stress of defending a
12  meritless and malicious lawsuit against his own company, including Johnson's personal
13  expense of defending the suit and his 40% of Storix's profits used to fund the litigation
14  against him. Johnson was further harmed by the resulting injury to his professional
15  reputation and loss of future earnings potential.

16    42.  All defendants' conduct in initiating, filing and continuing the Direct Suit was a
17  substantial factor in causing Johnson's harm. Johnson is informed and believes that all
18  defendants filed, pursued and continued the lawsuit with malice and intent to harm
19  Johnson as demonstrated by their callous indifference or wanton disregard for Johnson's
20  rights and the extreme financial burden their conduct was causing.

21    43.  Because all defendants herein have, in engaging in the acts alleged herein, acted
22  with and been guilty of oppression, fraud and malice, an award of punitive and exemplary
23  damages against them in an amount to be established at trial, is warranted.

24  //
25  //
26  //
27

28  [6] The $3,739 awarded to Storix is severable when determining favorable termination because it was
introduced as a separate and unrelated claim at trial and is currently subject of a pending appeal.

1

2

3

### SECOND CAUSE OF ACTION

**(Breach of Fiduciary Duty – Against defendants
Altamirano, Turner, Kinney and Huffman)**

4

5

44.  Plaintiff re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

6

7

8

9

45.  Partner-Defendants breached their fiduciary duty to Johnson by unfairly denying Johnson benefits of Storix that Partner-Defendants afforded themselves, including but not limited to indemnification for Johnson's successful defense against claims specifically brought against him as a Storix director.

10

11

12

13

14

15

16

46.  Partner-Defendants breached their duty to Johnson by using Storix's profits otherwise owed to Johnson for their personal benefit, including all monies paid to their personal attorneys and corporate corporate to facilitate, conceal and defend their tortious conduct unrelated to their duties of agents of Storix, by enlisting Attorney-Defendants to advise and assist Partner-Defendants in perpetuating and protecting their dominance and control, and by directing Attorney-Defendants to obstruct, interfere and otherwise defend against claims in the Derivative Suit brought on Storix's behalf.

17

18

19

20

47.  Johnson's harm caused by Partner-Defendants' breaches include being deprived indemnification by Storix, and by the loss of Johnson's 40% of Storix's profits used to pay Partner-Defendants and Storix's counsel for acts committed solely for Partner-Defendants' benefit.

21

22

23

24

48.  Johnson is informed and believes that Partner-Defendants breached their fiduciary duty to Johnson with intent to harm Johnson as demonstrated by their callous indifference or wanton disregard for Johnson's rights and the financial hardship they were intentionally imposing on Johnson for their personal benefit.

25

//

26

//

27

//

28

//

1
2
3

### THIRD CAUSE OF ACTION

**(Conversion - Against defendants
Altamirano, Turner, Kinney and Huffman)**

4  49. Plaintiff re-alleges and incorporates by reference all prior paragraphs as though
5  fully set forth herein.

6  50. Johnson was owed all undistributed profits of Storix earned prior to Partner-
7  Defendants became shareholders, and such money is personal property of Johnson.
8  Partner-Defendants substantially interfered with Johnson's property by knowingly and
9  intentionally taking possession of the money Johnson was entitled to, preventing
10 Johnson's access to the money or records pertaining to it, using the money for their
11 personal benefit, and refusing to return Johnson's money after he discovered the
12 conversion and demanded it be returned to him.

13 51. Partner-Defendants misrepresented and concealed the conversion of Johnson's
14 retained earnings at a time when Johnson placed faith and trust in Partner-Defendants,
15 and Partner-Defendants acted to prevent Johnson from discovering the conversion until
16 late 2018.

17 52. Johnson was harmed by the conversion of $475,560 owed to him, did not give
18 informed consent or otherwise approve of the conversion, and the Partner-Defendants'
19 conduct was a substantial factor in causing Johnson harm.

20 53. Johnson is informed and believes that Partner-Defendants engaged in the
21 conversion with intent to harm Johnson as demonstrated by their callous indifference or
22 wanton disregard for Johnson's rights and the financial burden the conversion imposed
23 on Johnson for their personal benefit.

24
25
26

### FOURTH CAUSE OF ACTION

**(Economic Interference – Against defendants
Altamirano, Turner, Kinney and Huffman)**

27 54. Plaintiff re-alleges and incorporates by reference all prior paragraphs as though
28 fully set forth herein.

1    55.  Partner-Defendants were not parties to the contract between Johnson and Storix
2    regarding the copyrights to SBAdmin but were aware of the contract and had personal
3    interests in interfering with the contract after they became shareholders of Storix eight (8)
4    years after the contract was formed. Partner-Defendants acted with specific intent to
5    interfere with Johnson's right to receive the benefits of the contract and knew their
6    actions would result in a breach of contract. Partner-Defendants triggered Storix's
7    obligation to perform under the contract, then induced Storix to breach the contract after
8    Johnson had performed his obligations for fifteen (15) years.

9    56. Partner-Defendants also interfered in Johnson's prospective economic
10   advantage by withholding a significant business opportunity with Veeam Software.
11   Partner-Defendants knew that the relationship between Johnson and Veeam existed and
12   that Johnson stood to substantially benefit from the relationship. Partner-Defendants
13   interfered in the economic relationship by attempting to extort Johnson with the threat of
14   continued litigation and deepening financial hardship. Partner-Defendants knew the
15   interference was substantially certain to occur as a result of their actions and intended the
16   interference to occur unless Johnson accepted their demands. As a result of Partner-
17   Defendants' acts, the economic relationship was disrupted.

18   57.  Johnson was harmed by being deprived $2.75 million owed to him under his
19   contract with Storix and by the loss of his $2 million share of the sale of Storix to Veeam.
20   Partner-Defendants' conduct was a substantial factor in causing Johnson's harm and
21   Partner-Defendants benefitted from their economic interference.

22                            **FIFTH CAUSE OF ACTION**
23                    **(Breach of Contract – Against defendants**
                  **Storix, Altamirano, Turner, Kinney and Huffman)**
24

25   58.  Plaintiff Johnson re-alleges and incorporates by reference paragraphs 1 through
26   36 above as though fully set forth herein.

27   59.  Johnson and Storix entered into an oral contract, and Johnson performed his
28   obligations under the contract for fifteen (15) years before Storix's obligation was

                                        14

1  triggered. Johnson notified Storix of its obligation to provide consideration under the
2  contract, and Storix denied Johnson said consideration.

3      60.  Johnson was harmed by being deprived $2.75 million owed to him under the
4  contract, and Storix benefitted from its breach of contract. Storix's conduct in breach of
5  contract was a substantial factor in causing Johnson's harm.

6      61.  Because Partner-Defendants were in majority control of Storix and rendered
7  Storix insolvent by taking all money otherwise owed to Johnson for their personal
8  benefit, Partner-Defendants are personally liable for consideration owed to Johnson that
9  Storix is unable to afford.

10              **SIXTH CAUSE OF ACTION**

11              **(Rescission – Against defendants**
12       **Storix, Altamirano, Turner, Kinney and Huffman)**

13      62.  Plaintiff Johnson re-alleges and incorporates by reference paragraphs 1 through
14  36 above as though fully set forth herein.

15      63.  Johnson and Storix entered into an oral contract, and Johnson performed his
16  obligations under the contract for fifteen (15) years before Storix's obligation under the
17  contract was triggered. Johnson notified Storix of its obligation to provide consideration
18  under the contract, and Storix denied Johnson said consideration.

19      64.  Johnson notified Storix in writing that he rescinded the contract due to Storix's
20  failure to perform its obligation. All parties to the contract at the time it was formed
21  consented to its rescission. Upon rescission of the contract, the parties were returned to
22  their respective positions prior to the contract's formation, including Johnson's
23  ownership of all copyrights to SBAdmin and Storix's grant of implied, non-exclusive
24  copyright licenses needed to conduct its business until such time Storix's implied license
25  was revoked in writing.

26      65.  Storix rejected the rescission of the contract, refused to provide consideration to
27  Johnson under said contract, and refused to restore consideration furnished by Johnson
28  under said contract.

66. Storix has been unjustly enriched for the acts alleged herein at Johnson's expense. Johnson has suffered and will continue to suffer substantial and irreparable harm if consideration in the form of all ownership rights to SBAdmin product are not restored. Johnson is entitled to restitution as a result of Storix's unjust enrichment, including the return of Johnson's copyrights and disgorgement of all benefits Storix derived from its use of Johnson's copyrights after Johnson revoked Storix's license to sell SBAdmin in July 2014.

67. Because Partner-Defendants were in majority control of Storix and rendered Storix insolvent by taking all money Storix obtained by its unjust enrichment for their personal benefit, Partner-Defendants are personally liable for Johnson's restitution Storix is unable to afford.

## SEVENTH CAUSE OF ACTION

### (Indemnification – Against defendants
### Storix, Altamirano, Turner, Kinney and Huffman)

68. Plaintiff Johnson re-alleges and incorporates by reference paragraphs 1 through 37 above as though fully set forth herein.

69. Johnson is entitled to indemnification by Storix, according to California Corp. Code § 317 and Storix's bylaws, for all expenses incurred in connection with his successful defense of any issues, claims or matters in the Direct Suit. Johnson successfully defended Storix's primary claim representing 99.7% of all monetary relief and all eleven (11) claims for injunctive relief demanded by Storix.

70. Johnson incurred significant legal expenses in connection with the Direct Suit to which Storix is contractually liable. Johnson provided to Storix his legal invoices and receipts representing many but not all expenses incurred in defending the Janstor Suit, and Johnson demanded reimbursement from Storix. Storix denied indemnity to Johnson by refusing to respond to Johnson's demand. Johnson was harmed by being unlawfully deprived indemnification, and Storix's conduct was a substantial factor in causing Johnson's harm.

71.  Because Partner-Defendants were in majority control of Storix and rendered Storix insolvent by taking money otherwise owed to Johnson for their personal benefit, Partner-Defendants are personally liable for reimbursing Johnson's expenses that Storix can no longer afford.

## PRAYER FOR RELIEF

72.  For general and special damages against all defendants, jointly and severally, according to proof at trial;

73.  For constructive trust;

74.  For the recovery of Storix's earnings owed to Johnson;

75.  For consideration of the fair value of Johnson's copyrights or, in the alternative, a declaratory judgment of rescission of Johnson's contract with Storix and return of Johnson's copyrights.

76.  For restitution and disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein;

77.  For punitive damages according to proof at trial at the maximum amount permitted by law;

78.  For pre-judgment interest and costs of suit;

79.  For an accounting between Johnson and defendants to include records of Storix under the control of defendants; and

80.  For such other and further relief as the Court may deem proper.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support

1   after a reasonable opportunity for further investigation or discovery; and (4) the

2   complaint otherwise complies with the requirements of Rule 11.

3        I agree to provide the Clerk's Office with any changes to my address where

4   case—related papers may be served. I understand that my failure to keep a current address

5   on file with the Clerk's Office may result in the dismissal of my case.

6

7   Dated: June 21, 2019                   By:

8                                             In Pro Per

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Las Vegas P&DC 89199

FRI 21 JUN 2019 PM

RECEIVED
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JUN 24 2019

Clerk of the Court
U.S. District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101

Taluson

gas, NV 89104